IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01699-MEH

MELEAHA R. GLAPION,

    Plaintiff,

v.

JULIAN CASTRO, Secretary, U.S. Department of Housing and Urban Development,

    Defendant.

_____

### ORDER ON MOTION TO DISMISS
_____

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's Motion to Dismiss Whistleblowing, Harmful-Procedural-Error, and Constitutional Claims Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed October 20, 2014; docket #51]. The motion is fully briefed, and the Court heard oral arguments on February 2, 2015. (*See* docket #92.) For the reasons that follow, the Court **grants** the Motion to Dismiss.

### BACKGROUND

    Plaintiff, proceeding *pro se*, initiated this action on June 18, 2014. (Docket #1.) Plaintiff's claims arise from her employment as a Management Analyst for the Department of Housing and Urban Development ("HUD") and her removal from that position on March 30, 2012. She alleges that her supervisors disciplined her on the basis of her race, color, and sex, and in retaliation for making whistleblowing disclosures. Prior to filing the present action, Plaintiff challenged her removal and discipline through the Merit System Protection Board ("MSPB") and Equal Employment Opportunity ("EEO") procedures.

The operative pleading – Plaintiff's Third Amended Title VII Complaint – asserts eight claims for relief: (1) Title VII discrimination based on race, sex, and color; (2) Title VII hostile work environment; (3) Title VII retaliation; (4) retaliation for whistleblowing; (5) harmful procedural error; (6) constitutional rights violations; (7) Fair Labor Standards Act violation; and (8) Freedom of Information Act violation. Defendant's Motion to Dismiss seeks dismissal of the fourth, fifth, and sixth claims. Defendant argues that harmful-procedural-error claim and due-process constitutional claim are subject to dismissal on jurisdictional grounds, and the retaliation for whistleblowing and constitutional claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARDS

### I. Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

## II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

### III. Treatment of a Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion 4of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*.

## ANALYSIS

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

## I.     Rule 12(b)(1) Defenses

HUD contends that the Court lacks jurisdiction over Plaintiff's harmful-procedural-error claim and due process constitutional claim because of the doctrine of sovereign immunity. "The United States, a sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "The United States consents to be sued only when Congress unequivocally expresses in statutory texts its intention to waive the United States' sovereign immunity." *Kimboko v. United States*, 26 F. App'x 817, 819 (10th Cir. 2001) (quoting *In re Talbot*, 124 F.3d 1201, 1205 (10th Cir. 1997)). A waiver of sovereign immunity must be unequivocally expressed and cannot be implied. *United States v. Mitchell*, 445 U.S. 535, 538 (quoting *United States v. King*, 395, U.S. 1, 4 (1969)). "Waivers of sovereign immunity are to be read narrowly." *James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992).

### A.     Harmful Procedural Error Claim

Plaintiff's fifth claim for relief alleges that HUD committed harmful procedural error by failing to comply with certain provisions of its collective bargaining agreement and policy handbook. She argues that the Court has jurisdiction over this claim pursuant to 5 U.S.C. § 7701(c)(2)(A). The statute Plaintiff relies upon regulates the procedures of the MSPB, and the provision she cites states as follows: ". . . the agency's decision may not be sustained under subsection (b) of this section if the employee or applicant for employment . . . shows harmful error

in the application of the agency's procedures in arriving at such decision." Subsection (b) regulates MSPB appeals. Plaintiff's claim is directed at HUD's alleged harmful procedural errors, and does not implicate MSPB.

In certain circumstances, appeals from a final decision of the MSPB are reviewable by the Court of Appeals for the Federal Circuit, which has "exclusive jurisdiction" over such appeals. 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7703. Plaintiff's harmful procedural error claim, however, is not an appeal of MSPB's decision, as Plaintiff makes clear by asserting that,"[i]t was inappropriate for Defendant to even infer 5 U.S.C. § 7703(c)[,] as such jurisdiction is within the United States Court of Appeals for the Federal Circuit."

Plaintiff argues that sovereign immunity is not a valid defense because the Administrative Procedure Act ("APA") waives government immunity for her claims. The APA provides that, "[a]n action in a court of the United States seeking relief other than money damage . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702; *see also Normandy Apartments, Ltd. v. U.S. Dep't of Hous. and Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009). Defendant counters that the APA provides judicial review for agency actions "for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and the adequate remedy for Plaintiff's claims is Title VII. "The Supreme Court has clearly stated that a federal employee's only avenue for judicial relief from federal employment discrimination is through Title VII." *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) (citing *Brown v. General Servs. Admin.* 425 U.S. 820, 828-29 (1976)). The APA does not provide an unequivocal waiver immunity for Plaintiff's procedural claims against HUD. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of scope, in

favor of the sovereign.").

The Court concludes that Plaintiff has not established a waiver of sovereign immunity for a harmful-procedural-error claim against HUD, and, therefore, the Court lacks jurisdiction over the claim.

B.      Due Process Constitutional Claim

Plaintiff's sixth claim for relief is directed at both HUD and MSPB.  Plaintiff alleges that HUD violated her due process rights by (1) placing her on involuntary administrative leave during her right to reply period which impeded her ability to challenge her removal; (2) removing her without providing her an opportunity to reply; (3) failing to provide her with information that was reviewed and considered in the disciplinary and adverse actions against her; (4) declining her request to record disciplinary meetings; and (5) escorting her out of the building. (Docket # 40, pp. 33-36.)  Plaintiff also implicates MSPB in this claim because it did not "remand" her case or determine whether HUD violated her due process rights or engaged in harmful procedural error. (*Id.* at ¶ 128.)

First, to the extent Plaintiff asserts constitutional tort claims, the United States has not waived its sovereign immunity for such claims asserted against federal agencies or the directors of those agencies in their official capacity.  *See FDIC v. Meyer,* 510 U.S. 471, 484-85 (1994). Defendant asserts that Plaintiff cites no authority to establish that an agency violating the due-process clause of the Constitution creates a cause of action to which the United States has waived its sovereign immunity.  Plaintiff counters that sovereign immunity is not a valid defense because the APA waives government immunity for her claims.  Again, the APA only provides judicial review "for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and the adequate

remedy for Plaintiff's claims is Title VII. *See Belhomme*, 127 F.3d at 1217.

Absent a clear waiver of sovereign immunity, the Court concludes that Plaintiff has not established the Court has jurisdiction over the constitutional due process claim.

**II.     Rule 12(b)(6) Defenses**

Defendant contends that Plaintiff's whistleblowing and constitutional claims should be dismissed for failure to state plausible claims for relief under Rule 12(b)(6). The Court need only address Defendant's Rule 12(b)(6) defense with respect to the whistleblowing claim because it has already determined that it lacks jurisdiction over the constitutional claim.

      A.     <u>Whistleblowing Claim</u>

Plaintiff's fourth claim alleges that Defendant retaliated against her for making protected disclosures under the Whistle Blower Protection Act, 5 U.S.C. § 2302(b) ("WPA"). "To establish a prima facie case for whistleblowing under [5 U.S.C. § 2302(b)(8)], Plaintiff must show by a preponderance of the evidence that (1) she made a protected disclosure, (2) she was subjected to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action." *Wells v. Shalala*, 228 F.3d 1137, 1147 (10th Cir. 2000). Defendant contends that Plaintiff has failed to plausibly allege the first and third elements of a WPA claim. Plaintiff alleges she made protected disclosures on January 24, 2011, July 19 and 20, 2011, December 21, 2011, January 12, 2012, January 23, 2012, and February 6, 2012. The Court will determine whether any of these alleged disclosures states a plausible WPA claim.

      i.     January 24, 2011 Disclosure

On January 24, 2011, Plaintiff alleges she made "whistle blower disclosures of Defendant not complying with HUD/AFGE Agreement Articles and HUD Handbook 625.1 as it pertains to the

HUD Telework Program[.]" (Docket # 40, ¶ 112.) Plaintiff alleges that, as retaliation for making the January 24, 2011 disclosures, Deputy Regional Administrator Daniel Gomez issued a "Notice of Proposal to Suspend for Seven (7) Calendar Days Without Pay" on February 9, 2011. (*Id.*) An employee may demonstrate that the disclosure was a contributing factor in the personnel action through circumstantial evidence, such as evidence that the official taking the adverse personnel action knew of the disclosure *and* the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1). In this instance, Plaintiff does not allege Mr. Gomez knew about the January 24, 2011 disclosure. Indeed, Plaintiff does not state to whom she made the disclosures, or which HUD employee allegedly engaged in the violation that she disclosed. Aside from the temporal proximity between the alleged disclosure and subsequent adverse action, there is nothing to indicate a causal connection between the two events. Thus, the Court concludes Plaintiff has failed to state a plausible claim for relief based on the January 24, 2011 disclosure.

    ii. July 19, 2011 Disclosure

Plaintiff also alleges that she made protected disclosures on July 19, 2011 by emailing Labor Employee Specialist Donald Gerrish, Local Union 3972 President Mongelli, and Deputy Ethics Official Ellen Dole about conduct by Public Affairs Officer Goin. (Docket # 40, ¶104.) Specifically, she informed Mr. Gerrish, President Mongelli, and Ms. Dole that Ms. Goin left a "libelous performance review atop a public printer while [Plaintiff] was out on medical leave[.]" (*Id.*) Plaintiff alleges she was disciplined on August 10, 2011 for "going against chain of command," in retaliation for sending the July 19, 2011 email. (*Id.* ¶105.) Plaintiff states only that "Defendant" disciplined her, but does not specify which HUD employee took action. Again, without

any allegation that the official who disciplined her knew about the disclosure – or, even who that official was – the Court cannot find a causal connection between the two events. *See* 5 U.S.C. § 1221(e)(1)(A).

Moreover, it is not entirely clear that Plaintiff's July 19, 2011 email was a protected disclosure under 5 U.S.C. § 2302(8), which includes:

> (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences--
>
> (i) any violation of any law, rule, or regulation, or
>
> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs; or
>
> (B) any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences--
>
> (i) any violation (other than a violation of this section) of any law, rule, or regulation, or
>
> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety[.]

Plaintiff alleges that her disclosure stated that the "matter seems analogous to one or part of 5 C.F.R. Ethical Standards for Government Employees." (Docket # 40 at ¶ 104.) It would be a stretch to construe Plaintiff's belief that the action "seemed analogous" to the entire Code of Ethical Standards as a "reasonable belief" that an employee violated a specific law, rule, or regulation under 5 U.S.C. § 2302(8). Thus, the Court concludes Plaintiff has failed to plausibly state a WPA claim based on

the July 19, 2011 email.

    iii. July 20, 2011 Disclosure

  Plaintiff next alleges she made protected disclosures on July 20, 2011 by emailing former HUD Deputy Secretary Sims and raising the following concerns about HUD: conspiracy, abuse of authority, hiring practices, nepotism, discrimination, unnecessary expenditures, and retaliation. (Docket #40, ¶106.) Plaintiff alleges that in retaliation for sending the July 20, 2011 email, Ms. Goin retaliated against her "the very next day." (*Id*. at ¶107.) Plaintiff does not specify the adverse action Ms. Goin took on July 21, 2011, but she does allege "matters were so severe she had to seek medical attention[.]" (*Id.*) She also alleges that Ms. Goin retaliated against her for the July 20, 2011 email by bringing four adverse action charges against her on August 15, 2011. Plaintiff alleges that Ms. Goin testified at the MSPB hearing on August 8-9, 2012: "I do recall that [Plaintiff] wrote emails to people in Headquarters, and we asked [her] not to do that. And [she] continued to write emails and have communications with people that were levels above my pay grade, the Regional Administrator's pay grade. And we firmly requested that [she] stop, and [she] didn't[.]" (*Id*. at ¶109.) Though the testimony does not specifically refer to the July 20, 2011 email, it suggests that Ms. Gion knew about Plaintiff's disclosures, and, considered with the close timing of the alleged August 15, 2011 charges against Plaintiff, the Court concludes that Plaintiff has plausibly alleged a causal connection between the alleged July 20, 2011 disclosures and the adverse employment action.

  It is a closer question, however, as to whether the email to Mr. Sims constitutes a protected disclosure, which requires that the employee reasonably and objectively believes "that the disclosed information evidences a violation of law, rule, regulation, gross mismanagement, gross waste of

11

funds, abuse of authority, or substantial and specific danger to public health or safety." *Madwell v. Dep't of Veterans Affairs*, 287, Fed. App'x 39, 43 (10th Cir. 2008) (quoting *Giove v. Dep't of Transp.*, 230 F.3d 1333, 1338 (Fed. Cir. 2000)). Reasonable belief is viewed objectively:

> The proper test is this: could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence [a violation of law, rule, regulation, gross mismanagement, gross waste of funds, abuse of authority, or substantial and specific danger to public health or safety]? A purely subjective perspective of an employee is not sufficient even if shared by other employees.

*Lachance v. White*, 174 F. 3d 1378, 1381 (Fed. Cir. 1999).

Plaintiff's email to Mr. Sims points out that HUD could save money by cutting back on travel expenditures or conducting meetings by webcast, but such concerns do not rise to the level of a "gross waste of funds." *See Wen Chiann Yeh v. Merit Sys. Prot. Bd.*, 527 Fed. App'x 896, 900; 901 (Fed. Cir. 2013) ("A gross waste of funds requires more than debatable expenditures that is significantly out of proportion to the benefit reasonably expected to accrue to the government.") Plaintiff's statement that program budgets don't provide funding for training and travel opportunities for staff because "the abusive power authorities have exhausted funds" is likewise more of a "debatable expenditure" than "a gross waste" under the WCA. Similarly, Plaintiff's statements that HUD received the lowest ranking of federal agencies for employee satisfaction and that employees fear they will be retaliated against for completing surveys do not equate to a disclosure of "gross mismanagement." *See id.* at 900. ("Gross mismanagement is a management action or inaction which creates a substantial risk of significant adverse impact to an agency's ability to accomplish its mission."). Plaintiff's references to the Obama campaign and the lack of transparency amongst the government's leaders are also not protected disclosures. Upon inspection, the July 20, 2011

email contains complaints by a disgruntled employee rather than the type of protected disclosures contemplated by the WCA.

Thus, the Court concludes that the alleged July 20, 2011 email does not state a plausible claim for relief.

                iv.        December 21, 2011 and January 12, 2012 Disclosures

Plaintiff further alleges that she made protected disclosures on December 21, 2011 and January 12, 2012 to Diana Degette's Congressional Office, "the Office of Presidential Correspondence," and former HUD Assistant Secretary for Congressional and Intergovernment Relations, Peter Kovar. (Docket #40, ¶103.) Plaintiff's allegations do not clarify what she disclosed, and appear only to address that Plaintiff's writing the letter would prompt immediate attention "because of the possibility of publicity or adverse political ramifications," and that any written responses "were merely attempts to cover/conceal the truth[.]" (*Id*.) Plaintiff also alleges that her disclosures included a scanned a copy of HUD's December 12, 2011 "aggravating/harmful response." (*Id*.) Reading these allegations together, and considering the complaint as a whole, the content of Plaintiff's alleged disclosure remains unclear, and the Court is unable to conclude that Plaintiff plausibly alleged the first element of WCA claim with regard to paragraph 103 in her Third Amended Complaint.

                v.        January 23, 2012 Disclosure

Plaintiff also alleges she disclosed on January 23, 2012 that Defendant was not complying with the Federal Medical Leave Act "which was a date in proximity of proposed removal." (Docket #40, ¶114.) This allegation does not specify to whom Plaintiff disclosed the information, or, aside from the temporal proximity, how it is connected to her removal. Without any allegations about who

knew about the alleged disclosure and how that person was responsible for her "proposed removal," Plaintiff has failed to state a plausible claim for relief with regard to the January 23, 2012 disclosure. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998) (explaining, with regard to Title VII retaliation claims, that "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary" to establish a causal connection between the protected activity and the adverse employment action)

      vi.      February 6, 2012 Disclosure

Plaintiff alleges she made an "Amendment of Records Request" on February 6, 2012 to HUD's Privacy Office disclosing that HUD was not complying with personnel data standards. (Docket #40, ¶110.)   Because Plaintiff does not indicate that an adverse personnel action against her was in any way connected to this disclosure, she has failed to state a WCA claim for relief based on this alleged communication.

      vi.      Other alleged disclosures

The Court also notes that Plaintiff generally alleges she "made whistle blower disclosures of Defendant improperly demanding that she transcribe recordings of EEO RMO Garcia's and EEO RMO Gomez's public delivered speeches by converting, removing verbal blunders, and perfectly restructuring." (*Id*. at ¶ 111.)  This allegation not only fails to state when the disclosure occurred or to whom it was made, but the disclosure itself appears to be a complaint about her assigned duties, which is not a protected disclosure.

Plaintiff also alleges generally that she made "whistle blower disclosures of Defendant committing Fair Labor and Standards Act (FLSA) violations."  (*Id*. at ¶ 113.) To the extent Plaintiff intends to allege a separate whistleblowing incident based on the above statement, it fails to

plausibly state a claim for relief because it does not indicate to whom the information was disclosed, what specific violations she disclosed, when the disclosure occurred, or how she was retaliated against for making the disclosure.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Whistleblowing, Harmful-Procedural-Error, and Constitutional Claims Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed October 10, 2014; docket #51] is **GRANTED**. Plaintiff's Fourth, Fifth and Sixth Claims for relief are dismissed.

DATED this 4th day of February, 2015, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge